Good morning. May it please the court, my name is Michael Schwartz. It is my privilege to represent the appellant Bruce Schwartz, who is my father as well as my client. The appellee, Ardis Bogen, is my mother. This ERISA issue is probably not as interesting or exciting as the case you just heard about sex trafficking, but it is very important from the standpoint that what is before this court is whether or not the New Jersey Family Court and whether or not Bogen are obligated to follow ERISA or whether they are above the law. Bogen maintains, and this is a very, very important point, that the division of the pension was done without a quadro. That is essentially an acknowledgment that there was no division of ERISA, even as amended by the Retirement Equity Act, because there was never a quadro, because no order was ever presented to the plan administrator, because the plan administrator never made any payments. When Bogen invented this argument in 2016, after Schwartz learned that he had paid alimony far longer than he needed to, it then went into this state court, and the issue is not, as argued by the appellee in a Houdini-like way to divert the attention of the court, the issue was not whether this 1983 judgment and decree was a quadro or not a quadro. There's no dispute that a state court has concurrent all relates to whether or not a beneficiary or participant is entitled to a benefit. Council, let me, I want to ask you a preliminary question, and it wasn't briefed by the parties, but it's a question of jurisdiction. I actually think there's a, this is a very interesting case, because there's a lot of interesting lurking issues here, but the problem I'm having is why doesn't the Rooker-Feldman doctrine preclude your suit? The court below talked about res judicata, but Rooker-Feldman says a state court loser can't appeal to a federal court. That's what the Supreme Court's decision in Saudi Basics said, and so, so long as the state court had jurisdiction to decide and to divvy up the assets, why can't, why are we not sitting as an appeal, appeals court for the state court, the state court decision or the state court that decided it? Very good question, Your Honor, and a very direct answer, because the question assumes that the state court had jurisdiction to make that decision, and in this case, Congress left exclusive jurisdiction to decide whether there's a violation of ERISA. But the problem I'm having with that argument is if you read, if you read ERISA, it limits the cause of actions to participants, beneficiaries, and fiduciaries, and what was Ms. Bogan? She wasn't either. She was none of those. So how could she have brought a cause of action under ERISA? She, she didn't. Well, so her only, her only resort in enforcing her divorce decree was to bring the case in New Jersey, right? I mean, she had no other option. She couldn't come to federal court. She, she, she couldn't come to federal court and argue that the alimony payments for 27 years reported by her on her tax returns as alimony for 27 years, she couldn't come to federal court and claim that that was a pension division, that she had followed ERISA. She had not. I don't disagree, Your Honor, that she could not come to federal court. She was not a beneficiary, she was not a participant, and she was not a fiduciary. So by necessity to enforce the divorce decree, that had to be within the jurisdiction of the state court. And all of this, I guess my point is, all of this was litigated in the state court. Now, maybe the state court judge got it wrong. Maybe the state court judge didn't understand what was going on. All of those things may be true. But it was all litigated in state court, and the only place she could have litigated it was in state court. And so I can't figure out why A, Rooker-Feldman doesn't apply, and B, race judicata doesn't apply. Two things, race judicata doesn't apply because the state court never decided, never had jurisdiction to decide whether this scheme by Bogan violated ERISA. And the fact that she cannot bring this invented claim 27 years later in state court is exactly why we're here. The state court did not have jurisdiction to simply say, you don't have to follow ERISA. If you follow ERISA, you have this order. If it's qualified, you give it to the plan administrator. The plan administrator then decides what those benefits are, and the plan makes those payments. So when you're questioning, you say she can't enforce the divorce order. She can. What she can't do is what she did here, and that's to change the divorce order. She changed that divorce order because Schwartz realized he'd been paying alimony when he didn't need to. I just think that this, as a matter of federalism, you know, I used to sit on a state court. I think that your argument disrupts sort of the balance between state and federal courts, which is family law and divorce decrees are sort of exclusively within the province, absent some of these other issues of state courts. And what you're telling me is that she can go to court maybe and try to enforce the divorce decree, but if she gets a judgment out of state court that somehow disrupts the ERISA plan, she can't run to federal court to change the, you know, to somehow alter the divorce decree or deal with the ERISA. Your client has a sort of a trump card and says, ooh, but I can go to federal court and invoke ERISA and undo what the state court did. That's not how I think it works. Frankly, your honor, that's a separate issue. And when Congress passed ERISA, it did so preempting all state law. There's mounds of case law that says ERISA preempts state law. And respectfully, Congress said to every state, including New Jersey, you don't get to make decisions contrary to ERISA when it comes to qualified plans, which the AT&T basic system plan was. It's qualified, no dispute about that. Congress said you don't get to make state court rules that violate that. What do we make of the fact, though, that even aside from this issue, I think we've exhausted it. But aside from this issue, the New Jersey state court decision says that, you know, essentially these issues were presented. You went ahead and said this would violate ERISA. Again, maybe the state court got it wrong, but you went ahead and litigated it there. And you're essentially getting a second bite at the apple. It's that's a good question also. And it's not a question of whether they got it wrong, because clearly they did. The question is, did the state court have jurisdiction to make this decision? And when you look at the decision it made, the state court did not say you get to divide a pension plan without a quadro and without following the requirements of the REA, which means you present the quadro to the plan administrator and the plan then makes those payments. Court didn't say that. The state court did not have jurisdiction to decide violations of ERISA. Do you agree that you made some of the same arguments you're making in federal district court now you made in New Jersey? Tangentially, yes. From the standpoint that what was said in New Jersey is this argument that Bogan's making here is prohibited by federal law. You can't, after 27 years, take an alimony payment and now suddenly call it a pension payment. And you'll note that the state court denied Bogan's request to require that the parties go back and amend their tax returns. The court said no, that was barred by laches and waiver. So essentially, it's very important, very important, Your Honor, to look at the exclusive jurisdiction that Congress placed in the federal court for violations of ERISA, for violations of a plan, which is what this is, their own acknowledgment. It's a violation. We're doing this without a quadro. And the concurrent jurisdiction that New Jersey would have under 1132A1B. And that is, you can make a decision that an order is a quadro or not a quadro, but you cannot make a decision that we're simply going to ignore those requirements of ERISA. So for that reason, we would ask that you carefully look at the facts, the key facts, and those include that Bogan, and I know I've said this several times, claims that the pension was divided without a quadro, which in essence is an admission and acknowledgment that we're doing this in violation of ERISA. And there are tax laws that combine with ERISA. For example, if you're getting a payment from a file of 1099R on your tax return, you don't report it as LMO, you report it as a pension claimant. And they're asking the New Jersey court to simply ignore all that. And that is what created this federal cause of action. There's no question that state decisional law is preempted by ERISA. This New Jersey order is state decisional law. And that is what gave rise to the I will reserve my other five minutes for rebuttal unless there are any questions at this point. Thank you for your argument. Thank you, Your Honor. Mr. Sullivan, we'll hear from you. Good morning, Your Honor. May it please the court, I represent artist Bogan, formerly artist Schwartz. Judge Strauss, I think, hit exactly on the issues here, which is that Mr. Schwartz fully participated in a New Jersey action where the New Jersey court had jurisdiction over the parties to enforce a New Jersey state court decree. On page A58 of the joint appendix, this language appears. In the event wife marries after January 1, 1986, but on or before December 31, 1990, husband shall pay wife as equitable distribution a yearly sum equal to 20 percent of husband's basic bell system management pension plan computed at the value of said pension plan on January 1, 1986. The New Jersey court clearly had jurisdiction to enforce that provision. I question as to whether or not the ERISA issue is a complete smokescreen for a domestic relations order in which the parties argued the issues as to whether or not Mr. Schwartz had to continue as did. That judgment was not appealed. It was a final judgment. That's fatal to appellant's argument. I believe it's also important to note that ERISA, if it applied, and I'm not, I think we've sort of been sidetracked into that argument, that the New Jersey court would have concurrent jurisdiction. The New Jersey court was not without the ability to make a remedy to allow whatever order had to be entered to require Mr. Schwartz to continue paying what he had been paying. And the notion that an amount calculated on a valuation of 20 percent somehow conflates to a quadro may or may not be true. I think it's irrelevant to the disposition of this case because it's a requirement that this man made every month. There was not a plan administrator paying Ms. Bogan. Mr. Schwartz was getting the money. The money was then divested from the plan. It wasn't coming out of his pension. It was aggregated with all of his other assets. And he was paying to his wife $1,426.32 every month. And now, 27 years after the fact, this somehow scheme is created not by my client, but by the appellant who unilaterally stopped making a payment for reasons that we didn't understand because the circumstances that made plain that he was paying that amount were apparent and open for many years. And the New Jersey court even addressed some of the latches arguments in this case and said that was another ground. And Judge Malas' order clearly indicated that he looked at the language of the party's agreement, the contract they made that Mr. Schwartz had performed for over 25 years and enforced it and said that he was entitled to, he was obligated to continue performing under that New Jersey state contract. First, the New Jersey court didn't have jurisdiction, despite what I said earlier. Is there any significance to the fact that the decision wasn't appealed? I guess there's two questions. One is, did they make that argument before the New Jersey state court, right? You don't have jurisdiction to decide this issue, which is important. And is there any significance to the fact they didn't appeal it? I think it's fatal if they didn't appeal it. And I think it's the first circuit in the Geiger case that the district court used in its opinion, where a partner was involved in a dispute with his law firm over division of plan payments to his ex-wife. In the first circuit, there's the England rule in Massachusetts where you can somehow have a reservation of a federal question in a state court action. That didn't happen here. And he didn't dispute at the time that the dispute was going on that the New Jersey court had jurisdiction over him. He only disputed the New Jersey court jurisdiction to enforce its order, the modification of property settlement agreement, after he lost. And you hit on it exactly right. He doesn't get a second chance because he's a participant in a plan. The plan is irrelevant to his obligation, I think. And I think the issue of ERISA clouds the issue. I agree with you that this is a very interesting issue. The whole notion as to whether or not any domestic relation orders ought to be in court. You go from Barber v. Barber to Obergefell and see the whole panoply of cases. It's fascinating. It's really fascinating what the court does. None of that is applicable here because we have a case where a man made this agreement and the New Jersey court enforced it and said, pay your arrearages, pay some attorney's fees, and continue to pay. Did you give any thought to Rooker-Feldman, which is whether this was essentially an appeal of a state court decision? Because according to the court, Rooker-Feldman applies when claims are by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. That's a quote from the Supreme Court. I thought of it, Your Honor, and I conceded. My brief is 14 pages long. I have a client whose economic stake in this is $17,000 a year. And the nuances of these cases, it's fascinating. It really is fascinating. But I couldn't do it. And I didn't bring it in part because I didn't believe the action had been created by the state court judgment. I believed that this was clear-raised judicata. And the Eighth Circuit and the U.S. Supreme Court says, you look at New Jersey law on what, when you have a second case, what did the law of the first case say? And the first case said, was it the same litigants? Absolutely it was the litigants. Artis Bogan, Bruce Schwartz. Was the issue the same issue? Yes. Was Mr. Schwartz obligated to continue personally paying his wife $1,426.32? New Jersey court ruled on that. Was that decision essential to the lower court or to the first court's finding? That was the whole Yeah. I'm just trying to figure out what, you know, the Supreme Court has told us you can't assume hypothetical jurisdiction. And so I'm trying to, because Rooker-Feldman sort of a jurisdictional doctrine and whether it applies, I'm just trying to figure out whether we have to address that first or whether we can address race judicata first as a threshold issue. And maybe that's for us to decide because you didn't bring the Rooker-Feldman issue. I think that the jurisdictional issue, even the fundamental question as to whether or not a could address that. I think the case can be disposed of under rule 47B because the district court made no clear error of law in ruling that the case should be dismissed on rule race judicata grounds. But unless the court has further questions, I yield the balance of my time. Very well, Mr. Sullivan. Thank you for your argument. Thank you. Do you care to make any rebuttal, Mr. Schwartz? All right. I'd like to address four issues, one of them directly responding to the question that Jitras asked in Rooker-Feldman. Clearly, the state court has to have jurisdiction for that to apply. And it's our argument that under 1132A3, the state court did not have jurisdiction to make a determination, which it did, that Bogan did not have to follow the ERISA requirements by presenting a plan to a plan administrator and then getting payments from the plan, reporting those payments as under 1099R, et cetera. Now, your client, my response to that is your client originally brought this action because you wanted to not, your client did not want to pay, had been paying for years and didn't want to pay someone who had remarried. No, sir, that's not what happened. Okay. My client in March of 2016 Stopped paying and then she came to court. Realized that he was paying alimony, that he threw the decree in the drawer and didn't realize that he could have stopped payment years earlier. Right. So the letter came in and then she came to court. My apologies for that. But I guess my question still is to the same point, which is, did you ever argue to the New Jersey state court, hey, you don't have jurisdiction? You're getting too close to the ERISA line. You can't, this is something we need to bring in federal court. No, we did not. Because until the state court took the action that it took and said, we don't, you don't have to follow ERISA Ms. Bogan. You don't have to. That's what created the cause of action. And there's this question about whether we appealed it in New Jersey. No, we did not because appealing it in New Jersey still would not have given the New Jersey court jurisdiction. And I'd ask that the court look at, and we cited this in our brief, Simons versus Diamond Shamrock Corporation, which is an eighth circuit case, 1988, in which it involved ERISA. The Missouri court had made a decision. They appealed it up to the Missouri court of appeals and there the eighth circuit said, ERISA's preemptive effect extends to state decisional law, as well as the state statutes and regulations. Thus the Gerson decision becomes irrelevant to the action before us. So appealing the New Jersey thing, Your Honor, we respectfully say would have been irrelevant to this issue. And that is under 1132A3, is that exclusive jurisdiction, which is vested in the district court, was that violated by the New Jersey court? And we say it was. With respect to the third issue as to concurrent jurisdiction, when counsel said the New Jersey court had concurrent jurisdiction, very important to look at what concurrent jurisdiction does exist. It exists only if you're trying to determine rights and benefits under the plan, under the plan, future benefits under the plan. And it makes sense because if you're under the plan, you're following ERISA. So you're not asking a state court to decide if ERISA's being violated or not violated. It clearly is. And that is a major, major distinction between the concurrent jurisdiction, and there's lots of case laws says you can decide whether it's a concurrent jurisdiction or a quadro. We don't dispute that. Not the issue here. Well, let me ask you this. I've had some cases dealing with quadros when I was a state court judge. And my question for you, is there any relevance? I've never dealt with a case where you had a division that preceded the introduction of sort of the rules on quadros. And they make a point of saying, well, this all happened before the rules on quadros changed or quadros were created. Does that make any difference here where you don't have to technically comply with all the requirements for a quadro? Well, good question. In 81, when they did the premarital settlement agreement, you couldn't divide a pension no matter what. In 83, when the order was entered, you couldn't divide a pension no matter what. In 84, the law was changed and it said you could divide a pension if you do it by quadro, you present it to the plan, etc. You follow the rules. And so what happened after that is parties would take orders that were entered prior to the REA. And if they qualified, there's a number of things that an order has to qualify, then you present that to the plan administrator. So there's case law out there that says you can take a pre-REA order, and if it qualifies, and that was the intent of that order, you can present that to the plan administrator, then the plan administrator goes forward and you can follow it. Had they done that 27 years earlier, or in 89, when she got remarried and had counsel look at the plan, etc., then a different case. Then the whole alimony thing could have come up earlier and they could have had that. Counsel, can you clear up one factual matter? Yes, sir. Over all these years, from starting when these monthly payments began decades ago, over all these years, who wrote the checks? Bruce Schwartz. Out of a personal checking account? Yes, Your Honor. And he reported those payments as alimony, and Bogus reported those payments on her tax returns as received as alimony. And did she ever receive any distribution or payment from the plan itself? Never, not one. All right, thank you for your argument. The case is submitted and the court will file an opinion in due course. Thank you both. Please call the next case for argument. The next case for argument is Management Registry, Incorporated v. A.W. Companies, Incorporated, et al.